RALPH B. GUY, JR., Circuit Judge,
dissenting.
Although the court acknowledges that we are interpreting a remedial statute that “should be construed broadly to effectuate its purposes,” it proceeds, in my view, to do just the opposite. The time-honored principle of broad construction is avoided by a finding that the statute itself provides a clear answer. I fully agree that the statute provides a clear answer, but not the one reached by the court.
The statute, which deals exclusively with military powers of attorney, represents an understanding by Congress that those in our armed forces, particularly those serving abroad for extended periods of time, cannot anticipate every situation that might require action on their part if they were home. An executed power of attorney is one answer to this dilemma.
Neither the clerk who rejected the proffered power of attorney nor the court maintain that the power of attorney was not executed in accordance with the statute. Rather, they read into the statute a requirement that the power of attorney must be an original. This interpretation is based on the language of 10 U.S.C. § 1044a(d): “The signature of any such person acting as notary, together with the title of that person’s offices, is prima facie evidence that the signature is genuine, that the person holds the designated title, and that the person is authorized to perform a notarial act.”[1] In support of its interpretation the court states: “The statute does not speak of photocopies, certified copies, or reproductions of any sort.” I agree, but I do not understand the omission of any reference to “photocopies” to mean that only an original will suffice. This hardly constitutes a broad construction.
To require an original also seems to ignore the circumstances under which a power of attorney executed by a member of the armed forces in a war zone, for example, would be executed. It is hardly feasible to mail the original home. If a member of the armed forces had the forethought to execute a power of attorney before going overseas, this problem probably would be avoided. But the statute is aimed, at least in part, at persons acting under extreme circumstances. The more likely scenario in this digital age, is that the power of attorney would be sent home as an attachment to an email.
Although I do not think any resort to legislative history is either necessary or helpful, I am puzzled by that portion of the legislative history which the court finds lends support to its interpretation. The House Armed Services Committee Report, which I quote again to provide context, states:
*504 The past experience of service members and their dependents who executed powers of attorney in advance of recent military operations has shown that some states and territories have refused to honor those powers of attorney because they were not executed in accordance with state or territorial legal requirements. The failure to honor these documents has created substantial hardships for military families.
This section would provide that a power of attorney signed by a person authorized to receive legal assistance and notarized by a person authorized under section 1044a of title 10, United States Code, to perform notarial acts shall be recognized as valid and given full effect by those to whom such a power of attorney is presented.
From this the court concludes that although Congress “intended to simplify the process of preparing and using powers of attorney for military families, and it did so by preempting the states’ various formalities for powers of attorney ... it still retained minimal formalities, including notarization.” Since the document in question was notarized, the court imports the requirement that it be an original from the contention that “notarization serves an important governmental interest in preventing fraud.” Assuming this to be the case, I would suggest that one consider just what the recording clerk faced when presented with this document. She did not know the person who presented the power of attorney; she did not know the person who executed the power of attorney, or the notary who authenticated the signature; she did not have any way of knowing if the notary was even a person authorized to authenticate a signature, and all of this would have been the situation whether she had been presented with an original or a copy. All she knew was that she was to accept only originals for recording. It is clear that if fraud is the concern, the recording clerk would have been in no better position to detect it, whether presented with an original or a copy.
This seems to be a particularly odd time in history to be concerned about copies. We live in a world of copies, whether it be faxes, email attachments, or any number of other digital transmissions. Indeed, for many years the Federal Rules of Evidence has provided in Rule 1003 that “[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original’s authenticity or the circumstances make it unfair to admit the duplicate.” Since the Federal Rules of Evidence bear the imprimatur of Congress, this is at least some insight, in a global sense, about how Congress feels about the reliability of copies.
Since this is a § 1983 action, I do not mean to pass any judgment on the clerk who was following what she understood to be the limit of her powers to accept copies. If three federal judges cannot agree on what a statute means, I cannot fault a recording clerk for being uncertain. Since the document sought to be recorded was actually recorded long ago, this all would be somewhat of an exercise in futility were it not for the fact that with a large number of persons still serving in the armed forces this situation is capable of repetition.
I would reverse the district court based upon the interpretation made of the statute at issue, but would not pretermit the possibility of disposition of this matter on other grounds.

. The clerk's original rejection was based on reliance on state law, which is specifically preempted by the federal statute. No contention is made to the contrary, however, it is the litigation posture of the defendants that because the power of attorney did not comply with the requirements of the federal statute, there was no preemption.